IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

ALAN L. JONES,                           )
                                         )
                    Plaintiff,           )
                                         )
vs.                                      )          No. 05-3312
                                         )
CITY OF SPRINGFIELD, ILLINOIS,           )
a municipal corporation,                 )
                                         )
                    Defendant.           )

OPINION

RICHARD MILLS, U.S. District Judge:

This is a race discrimination case pursuant to Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

Plaintiff alleges he was not promoted because of his race (white).

The City's motion for summary judgment is allowed.

I. BACKGROUND

Plaintiff Alan L. Jones has been employed by the City of Springfield,

Illinois Police Department ("Department") since May 22, 1995.  He began

his employment with the Department as a probationary police officer and

was a patrol officer in 2004 at the time of the relevant employment decision.

The positions of sergeant and lieutenant within the Department are filled through a competitive merit process prescribed by both the Illinois Municipal Code and the Rules of the Springfield Civil Service Commission. Candidates are placed on an eligibility roster in a ranking based upon the scores achieved through the competitive process, their military service and their longevity in the Department. Vacancies are filled by selecting the individual who is then ranked highest on the eligibility roster. Eligibility rosters are normally in effect for a period of two years. When one list expires, a new list is created through the same process. The promotional eligibility list can be extended for an additional year beyond the original two year duration.

Individuals who are listed on the sergeant eligibility roster hold the rank of police patrol officer. Individuals listed on the lieutenant eligibility roster hold the rank of sergeant. When a lieutenant vacancy arises, it is filled by a sergeant. When that occurs, a vacancy typically arises for a

2

sergeant's position which is then filled from the sergeant eligibility roster. The City disputes these allegations to the extent that, when a vacancy occurs at the lieutenant or sergeant rank, it is at the discretion of the Police Chief to determine whether it will be filled.  At no time since May of 1995 has: (1) an officer been promoted to the rank of either sergeant or lieutenant who did not, at the time of the promotion, rank highest on the eligibility roster; or (2) an individual been promoted to either sergeant or lieutenant over a person that ranked higher than him on the eligibility roster at the time of the promotion.

The sergeant eligibility roster in place at the time of the employment decision relevant to this case was due to expire on October 5, 2004.  Ralph Harris, an African-American, filled the vacancy when he was promoted to sergeant on October 1, 2004.  Harris  replaced Stephen Swetland, who was promoted to lieutenant on the same day.  Plaintiff Jones was fourth on the eligibility list for promotion to sergeant.  Harris ranked third.  The issue in this case turns upon whether Jones would have been promoted at that time had he been an African-American and was the only African-American on

the eligibility list.  When the sergeant eligibility roster expired on October 5, 2004, Jones was the highest ranking individual on that roster.  He had been on the roster since the fall of 2001.

There were several other positions filled at about the same time.  Lon Crook, a white male who was second on the eligibility list, was promoted to sergeant on October 1, 2004, replacing Daniel Mounce who was promoted to lieutenant that day.  Brad Zack, a white male who was first on the eligibility list, was promoted to sergeant on October 1, replacing Michael Goin who retired from the Department on September 19, 2004.  Lea Joy retired as a lieutenant from the Department on June 25, 2004, and her position was not filled.[1]  Greg Smith retired as a lieutenant from the Department on September 17, 2004, and he was replaced by Mounce.  William Pittman retired as a lieutenant from the Department on October 2, 2004, and he was replaced by Stephen Swetland.  The Department issued a press release on August 26, 2004, stating that "should any

---

[1] The City claims that former Police Chief Donald Kliment did not fill the vacancy created by Lea Joy's retirement because he used her salary to equalize the salaries of the existing lieutenants and to finance an additional patrol officer position.

4

vacancies arise prior to the applicable expiration dates, [Sergeant and Lieutenant's Eligibility Lists], it is the Department's intention to fill those vacancies from the current promotional lists."

Donald Kliment served as Chief of the Springfield Police Department from June 24, 2003, to June 21, 2007.  Chief Kliment spoke out against extending the sergeant's eligibility list at the October 2003 Civil Service meeting because fifteen minorities and female officers would be eligible to take the examination if it was offered at that time.  Chief Kliment did not utilize the rule of three that would have allowed him to bypass the two white officers and promote the third person (Ralph Harris) eligible for promotion on a promotional eligibility list.  Jones was eventually promoted by Chief Kliment to sergeant on December 14, 2006.  The promotion occurred because of Jones's standing on the eligibility roster which was then in place.

The City alleges the Police Chief appoints sergeants and lieutenants in the Department at his sole discretion from the applicable eligibility list. Jones disputes this assertion and claims that under the terms of Section V

of the Rules of the Springfield Civil Service Commission and Sections 10-1-12 and 10-1-13 of the Illinois Municipal Code, promotions to positions such as sergeant and lieutenant are to be made from an eligibility list created as a result of an open competitive process, which restricts the discretion of the appointing authority.  The collective bargaining agreement does not mandate or specify a minimum number of sergeants.

On October 4, 2004, the Plaintiff filed a grievance pursuant to the collective bargaining agreement covering patrol officers and sergeants because he was not promoted to the rank of sergeant before the sergeant eligibility roster expired.   Jones alleges that the following day, his promotional grievance was denied at the Step II level by Patrick Fogleman, who Jones claims was acting in the capacity of Deputy Chief of Administrative Services.  In response to the grievance, the Plaintiff received a letter from Chief Kliment  stating that all "vacancies which occurred prior to the expiration of the previous civil service promotional eligibility lists were filled from those lists."  Jones acknowledges this accurately quotes the former Chief's response but asserts that, because of the retirement of

6

Deputy Chief Jim Burton, which was effective October 8, 2004, and the elevation of Lieutenant Pat Fogleman the following day to his position, an additional sergeant vacancy did in fact exist.

Chief Kliment arranged a meeting for Jones to speak with Mayor Timothy J. Davlin concerning his grievance.  Jones alleges that during the meeting, the Mayor informed him several times that he made the promotion decisions concerning who was selected to advance to sergeant. He also claims that during their discussion, Mayor Davlin informed Jones that political pressure had been put on him to promote Harris by the NAACP and other organizations who were pushing him very hard to have Harris promoted.  The City disputes these assertions and contends Mayor Davlin did not tell the Plaintiff that he made these promotional decisions. Moreover, the Mayor was not the decision-maker regarding these promotional decisions and he did not tell the Plaintiff he was under pressure from the NAACP and other organizations.[2]   The Plaintiff also

---

[2]Mayor Davlin stated that although he may be informed about who is being promoted within the Police Department and he signs off on the promotion, the decision on whom to promote is made by the Police Chief.

7

received a letter from Mayor Davlin's designee in response to his grievance that stated the "Springfield Police Department filled all vacancies occurring prior to the expiration of the previous civil service promotional lists from those lists."  Jones claims the letter is not consistent with what the Mayor told him.

The two officers who were promoted to sergeant at the same time as Ralph Harris were Brad Zack and Lon Crook, both of whom are white males.  Prior to Harris's appointment to sergeant, an African-American officer had not been appointed to that rank since 1994.  When Harris was appointed in October of 2004, the other 34 individuals then holding the rank of sergeant were white males.  There were 226 white male officers, nine African-American officers, one Hispanic male officer, one Asian male officer, 24 white female officers, and one African-American female officer out of 262 sworn police officers and supervisory staff on October 11, 2004.  On October 9, 2004, there was one African-American lieutenant out of thirteen individuals holding that rank.  There was one African-American deputy chief out of four individuals holding the rank of deputy chief.

8

The record shows that several individuals were promoted before the individuals they replaced officially left their positions. Rickey Davis, an African-American, was promoted to the rank of lieutenant by former Police Chief John Harris on June 4, 2001, prior to the retirement of David Searcy on July 2, 2001, who Davis replaced. Patrick Ross, a white male, was promoted to the rank of sergeant by former Chief Harris on December 31, 2001, prior to the retirement of John Adelman on January 18, 2002, who Ross replaced. Christopher Russell, a white male, was promoted to the rank of sergeant on August 19, 2005, by former Chief Kliment, prior to the retirement of Jeffrey Vacker on August 22, 2005, who Russell replaced. Dennis Arnold, a white male, was promoted to the rank of lieutenant on December 12, 2002, prior to the retirement of Mark Harms on January 13, 2003, who Arnold replaced.

The complaint alleges that Jones was denied a promotion on account of his race, in violation of Title VII. Jones claims that on at least two occasions, the City selected an African-American on the eligibility roster when it became aware the incumbent intended and was about to retire.

9

Jones alleges the City did not follow the same practice in his case.

## II. ANALYSIS

### A. Legal standard

The entry of summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  If a defendant can show the absence of some fact that the plaintiff must prove at trial, then the plaintiff must produce evidence, and not merely restate his allegations, to show that a genuine issue exists.  Sartor v. Spherion Corp., 388 F.3d 275, 278 (7th Cir. 2004).  The Court construes all facts and makes all reasonable inferences in favor of the non-moving

party.  Magin v. Monsanto Co., 420 F.3d 679, 686 (7th Cir. 2005).

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff can support a Title VII claim for failure to promote in one of two ways, either by "directly show[ing] that racial discrimination motivated the employment decision, or, as is more common, [by relying] on the indirect, burden-shifting method. . . ."  Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 736-37 (7th Cir. 2006) (citation omitted).  Jones claims to rely on both the direct method and the indirect method.

B. Direct Method

(1)

When proceeding under the direct proof method, a plaintiff may rely on direct evidence or circumstantial evidence of discrimination.  See Rudin v. Lincoln Land Community College, 420 F.3d 712, 720 (7th Cir. 2005).

"Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." Id. (citation omitted). Such evidence "can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." Id. (quoting Troupe v. May Department Stores, 20 F.3d 734, 736 (7th Cir. 1994)). An example of this type of evidence is testimony from an employer that an employee would not be promoted because of his race. See Rudin, 420 F.3d at 720 (citation omitted). Jones does not claim to have direct evidence of discrimination.

"Circumstantial evidence of discrimination, on the other hand, allows the trier of fact to *infer* intentional discrimination by the decisionmaker." Rudin, 420 F.3d at 720 (internal quotation and citation omitted) (emphasis in original). The court explained that there are three distinguishable types of "circumstantial" evidence of intentional discrimination:

> The first consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn.... Second is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff

12

other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment.... [T]hird is evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief ....

Rudin, 420 F.3d at 720-21 (quoting Troupe, 20 F.3d at 736).  Under the direct method, whether relying on direct evidence or circumstantial evidence, a plaintiff avoids summary judgment if he shows there is a genuine issue of material fact regarding whether the challenged employment action had a discriminatory motivation.  See Rudin, 420 F.3d at 721.

(2)

The Plaintiff claims there is circumstantial evidence from which a jury reasonably could conclude that had Jones been black he would have been promoted to the rank of sergeant along with Ralph Harris.  Jones first alleges that at the time Harris was promoted, the two men were similarly situated in all material respects other than race.  They ranked next to one another on the sergeant eligibility roster and there were vacant positions

13

which each could fill.  Jones argues that with respect to him, a vacancy arose because of the promotion of Pat Fogleman from lieutenant to deputy chief upon the retirement of Jim Burton.  He contends that with the promotion of Fogleman, a vacancy existed in the rank of lieutenant which would be filled by a sergeant, necessarily creating a sergeant vacancy.

The City disputes that Jones and Harris were similarly situated because although a vacancy arose allowing for the promotion of Harris, the same is not true for Jones.  Harris was promoted to sergeant when Stephen Swetland was promoted from sergeant to lieutenant prior to the expiration of the eligibility lists.  The City further contends Plaintiff's statement that he would have been promoted if he were black is a conclusory allegation devoid of any factual support.  Moreover, it disputes Jones's assertion that a vacancy arose which would have allowed for his promotion when Pat Fogleman was promoted from lieutenant to deputy chief upon the retirement of James Burton.  Burton retired after the lieutenant and sergeant eligibility lists expired.

The City further contends that Fogleman was not acting in the

14

capacity of Deputy Chief of Administrative Services prior to October 5, 2004. James Burton held that position until his retirement on October 8. Burton was training Fogleman in September of 2004, but Fogleman was assigned to Internal Affairs as a lieutenant at the time. Fogleman did not occupy Burton's office prior to Burton's retirement. Moreover, Fogleman signed off on the promotions of Daniel Mounce and Stephen Swetland as a lieutenant, not as deputy chief, as part of his training under Burton. He handled other grievance matters in the same capacity. The City contends it was on October 9, 2004, after the sergeant and lieutenant eligibility lists had expired, that Fogleman was promoted to Deputy Chief of Administrative Services.

The record supports the City's claim that Burton retired after the sergeant and lieutenant eligibility lists expired. While it is true that, under former Chiefs Harris and Kliment, an officer was sometimes promoted prior to the retirement of the incumbent, there is no indication that promotions were always handled this way. Several white officers and at least one African-American officer, Rickey Davis, were effectively promoted before

15

their predecessors retired.  This is not suggestive of any discriminatory intent.  It would be speculation for the Court to conclude that Plaintiff would have received the promotion prior to the expiration of the eligibility lists if he were African-American.

Next, Jones asserts that for over a year there was a concerted effort to arrange for the promotion of an African-American to the rank of sergeant. He claims that members of the public and a Springfield City Alderman encouraged the Commission in the fall of 2003 to extend the eligibility list to enable an African-American to be promoted to sergeant.  On October 5, 2004, the sergeant eligibility list was to expire and could not be extended under the Commission's rules.  If Harris had not been promoted to the rank of sergeant prior to its expiration, the likelihood of him being promoted in the near future was at best remote.  Jones claims Harris would have ranked 23rd on the preliminary ranking for the new sergeant eligibility roster.

According to the City, Jones has presented nothing more than his own conclusions and opinion that there was a concerted effort to promote an African-American to sergeant.  Moreover, because neither the general public

nor a single alderman was the decision-maker in promoting Harris, their views do not constitute direct evidence of discrimination.   See Gorence v. Eagle Food Centers, Inc., 242 F.3d 759, 762 (7th Cir. 2001).   ("[I]f someone not involved in the decisionmaking in a plaintiff's case expressed discriminatory feelings, that is not evidence that the decision was discriminatory.").

Jones next contends Mayor Davlin admitted that promotional decisions to sergeant were made by him and he was under considerable pressure from African-American interest groups to promote Harris.  Jones claims the Mayor acknowledged that Harris was promoted early (prior to Pittman's retirement), but offered no explanation why similar treatment was not afforded to him.[3]  The City asserts whether Mayor Davlin told the Plaintiff that promotional decisions were made by him and that he was under considerable pressure from unnamed African-American interest groups to promote Harris does not raise an issue of fact because diversity is a permissible factor to consider when making a promotional decision

---

[3]Harris was promoted one day before the effective date of Pittman's retirement.  It was before the expiration of the promotion eligibility list.

17

involving a law enforcement agency.  See Petit v. City of Chicago, 352 F.3d 1111, 1114 (7th Cir. 2003).  Moreover, the City notes it was former Chief Donald Kliment, not the Mayor, who was the decision-maker.

Jones has not presented enough evidence under the direct method to avoid summary judgment.  Jones and Harris were not similarly situated in all material respects (other than race) because, although they were next to one another on the sergeant eligibility list, there were not vacant positions which each could fill.  The positions were not similarly situated because only one became open before the eligibility list expired. The position Jones sought did not become open until Pat Fogleman's promotion from lieutenant to deputy chief upon the retirement of Jim Burton.  Burton's effective date of separation was October 8, 2004, which was after the eligibility list expired.  Fogleman's promotion was effective the following day.

Although there may have been public pressure to arrange for the promotion of an African-American, it does not follow that intentional discrimination by the decision-maker can be inferred.  Jones was not passed

over in favor of Harris.  There is no inference of discrimination because

Harris was ahead of Jones on the promotion eligibility list.  Because of this

crucial distinction, the Court is unable to infer that African-American police

officers received systematically better treatment that white officers.  An

inference of discrimination might arise if Harris was promoted despite being

behind Jones on the list.

After viewing the evidence in the light most favorable to Jones

pursuant to the direct method, the Court concludes Jones is unable to show

that there is a genuine issue of material fact regarding whether the

employment action had a discriminatory motivation.

C. Indirect Method

(1)

A modified version of the typical prima facie case is used in cases

which involve reverse racial discrimination.  First, the plaintiff must show

background circumstances which "support an inference that the defendant

is one of those unusual employers who discriminates against the majority."

Mills v. Health Care Service Corp., 171 F.3d 450, 455 (7th Cir. 1999)

(citation omitted).  "[E]vidence that those running the company are under pressure from affirmative action plans, customers, public opinion, the EEOC, a judicial decree, or corporate superiors imbued with belief in diversity to increase the proportion of [minorities] in the company's workforce[] would satisfy the modified McDonnell Douglas standard." Hague v. Thompson Distribution Co., 436 F.3d 816, 822 n.5 (7th Cir. 2006) (noting background circumstances which might apply in cases involving white decision-makers favoring minorities) (internal quotations and citation omitted).  "[A] plaintiff in a reverse discrimination case must show at least one of the background circumstances these other courts have alluded to." Mills, 171 F.3d at 457; see also Gore v. Indiana University, 416 F.3d 590, 592 (7th Cir. 2005) (noting "the need for flexibility in applying the indirect method of proving discrimination.").

If a plaintiff meets the "background circumstances" prong, he must also show (1) that he applied for, and was qualified for, an open position; (2) he was not hired; and (3) an individual outside of the plaintiff's class was selected, or the position remained vacant.  See Mills, 171 F.3d at 457;

see also Gore, 416 F.3d at 592.  If the plaintiff asserts a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged action.  See Gore, 416 F.3d at 592. If the defendant proffers such a reason, the burden returns to the plaintiff who must then offer evidence showing that the defendant's reason is a pretext.  Id.

(2)

_____The City claims that the case fails at the first step because the Plaintiff is unable to point to any background circumstances that it discriminates.  There is no evidence that the City has reason to discriminate against whites, nor is there anything "fishy" about the facts.  See Mills, 171 F.3d at 455.  Brad Zack and Lon Crook, both of whom are white, were promoted  by Chief Kliment at the same time Ralph Harris was promoted. Two white officers, Daniel Mounce and Stephen Swetland, were promoted to lieutenant at the same time.  Moreover, the racial composition of the Springfield Police Department when Jones was a patrol officer was overwhelmingly white and nearly all supervisors were white males.

21

Jones claims that a reasonable jury could find there were background circumstances suggesting that the City had an inclination to discriminate in favor of an African-American.  In particular, he alleges (1) the eligibility list was extended in November of 2003 for an additional year because it provided an opportunity to promote an African-American to the rank of sergeant; (2) there was no reason not to reach down one position further and select Jones when Harris was promoted because there was another open sergeant position that became vacant when Fogleman was promoted; and (3) Mayor Davlin was under pressure from African-American interest groups to promote Harris.  Moreover, Jones contends that the City's argument about the racial composition of the Department ignores the requirements which exist for hiring police officers and promoting them under the City's civil service system.  It was because of the scarcity of blacks that the City made a concerted effort to arrange a mechanism for promoting Harris when it had the opportunity.  Jones states, moreover, that he does not claim Harris was ill-qualified for promotion, but only that he should have received the same treatment.

22

The Seventh Circuit has broadly defined the scope of the background circumstances which might apply under the modified <u>McDonnell Douglas</u> standard.  <u>See</u> <u>Hague</u>, 436 F.3d at 822 n.5.  Because there is evidence there was at least some public pressure to promote an African-American to sergeant, the Court concludes that Jones has made a sufficient showing of the requisite "background circumstances" in order to withstand summary judgment.  <u>Id.</u> at 822 n.5 (mentioning that pressure on decision-makers from, <u>inter alia</u>, public opinion might satisfy a plaintiff's prima facie case under the modified <u>McDonnell Douglas</u> standard).

(3)

The City further contends that Plaintiff is unable to meet the second element because he cannot show he was meeting its expectations.  The fact that Jones was placed on the promotional list based on his performance on an oral and written examination does not demonstrate that he was doing his job satisfactorily.   Jones asserts he has demonstrated that he was qualified for the position.  His position on the eligibility list ranked him second to Harris.  According to Jones, Harris ranked higher almost entirely

because of his seniority.  Thus, Jones claims that if Harris was qualified to be promoted to sergeant, then he was too.  Jones also alleges that in his nine years as a patrol officer, (1) his performance was never criticized by a superior; (2) he received two awards for valor, one of which was the highest award the Department gives to an officer; and (3) he had served for five years as a field officer for new police officers.  Although the City points to a couple of disciplinary infractions as evidence that Jones was not meeting its expectations, the Court concludes there is at least a factual question on that element of the prima facie case.

Moreover, the City asserts that Plaintiff cannot meet the fourth element because he is unable to show that he and Ralph Harris were similarly situated in all material aspects.  As the Plaintiff states, however, that is not an element of a prima facie case when the claim is for failure to promote.[4]  See, e.g., Gore, 416 F.3d at 592.

The only thing left for Jones to show in order to allege a prima facie

---

[4]The City cites Ballance v. City of Springfield, 424 F.3d 614 (7th Cir. 2005), in alleging that a plaintiff must show as part of the prima facie case that he and someone outside of his class are similarly situated in all material aspects.  However, Ballance was an unlawful termination case, not a failure to promote case.

24

case is that he was not hired and that someone outside of his class was hired, or the position remained vacant.  See Gore, 416 F.3d at 592.  Jones sought to fill the vacancy he claims arose when Pat Fogleman was promoted from lieutenant to deputy chief upon Jim Burton's retirement.  According to Jones, a sergeant would have been promoted to lieutenant, thus creating a position for him (since Jones was next on the promotion eligibility list).  Neither Jones nor anyone else was hired.  It is not really accurate to say that the position remained vacant.  Technically, there was no vacancy until after the promotion eligibility list had expired (if there ever was a vacancy).  It is not clear that Jones is able to allege a prima facie case of reverse discrimination.[5]

For the reasons that follow, however, the Court concludes that assuming Jones is able to assert a prima facie case of reverse discrimination, he is unable to show that the legitimate, non-discriminatory reason articulated by the City regarding why he was not promoted is a pretext for

---

[5]The Court recognizes that the gravamen of Jones's complaint is that he would have been promoted if he were African-American, even if the vacancy did not arise until after the expiration of the promotion eligibility list.  On this basis, the Court assumes Jones has alleged a prima facie case of discrimination.

25

a discriminatory reason.

D. Indirect Method–Pretext

The City contends that Jones was not promoted because no vacancy existed. To show that the reason articulated by the employer is pretextual, the plaintiff "must demonstrate that the employer's reason is unworthy of belief." Gusewelle v. City of Wood River, 374 F.3d 569, 575 (7th Cir. 2004) (citation omitted). The Court concludes that Jones is unable to do so.

The record supports the City's legitimate, non-discriminatory reason. Ralph Harris was not treated more favorably than Jones or other white officers. White male patrol officers, such as Lon Crook and Brad Zack, were treated the same as Harris. Former Chief Kliment did not promote Harris out of rank order nor did he utilize the rule of three that would have allowed him to bypass the two white officers in order to promote the third person (Harris) on the list. Chief Kliment stated in his grievance response to the Plaintiff that "[a]ll vacancies which occurred prior to the expiration of the previous civil service promotional eligibility list were filled from those

26

lists (Sergeant's Eligibility List)."  The Plaintiff also received a letter from the Mayor's designee which referred back to Kliment's response.  The City's official response on Jones's grievance has been consistent.

Jones claims that a reasonable juror could find the City's reason unworthy of belief.  A juror could determine that a sergeant's vacancy existed on October 1, 2004, the date Harris was promoted, which could have been filled by Jones.  By that date, Jones claims that Pat Fogleman was acting in his capacity as deputy chief.  While Jim Burton did not officially retire until October 8, 2004, Jones alleges that Fogleman was performing his job duties prior to that date.  Because Harris was promoted two days before an official vacancy was created and because this was commonplace on the Department, Jones asserts that the same should have been done for him. He contends, therefore, that a reasonable fact finder could conclude that the City's explanation for not promoting him when Harris was promoted is not credible.

There is no minimum number of sergeants according to the applicable labor agreement.  Article IV, Section 4.1 of the Management Rights

provision gives the Mayor or his designee [Police Chief] the right to "direct the work forces; to plan, direct and control all the operations and services of the Police Department; . . . to determine the methods, means, organization and number of personnel by which such operations and services are to be conducted; . . . and to change or eliminate existing methods, equipment or facilities." The City notes, therefore, that the Police Chief, in his sole discretion, decides the number of personnel that are needed to operate the Department, including the number of sergeants and lieutenants required to efficiently manage the department.

Regarding the Plaintiff's argument that the City on multiple occasions has promoted an African-American to the rank of sergeant when it became aware that the incumbent intended to retire, the record supports the City's claim that there have been numerous instances at the Department where African-Americans and whites were promoted in anticipation of a vacancy. Thus, white and African-American police officers have been treated in the same manner with respect to promotions before the effective date of the position becoming open.

28

The record supports the City's assertion that no actual vacancies existed at the time Jones sought a promotion.  Ralph Harris was not promoted before an actual vacancy occurred.  Harris replaced Stephen Swetland on the day Swetland became a lieutenant.  Several white officers were promoted in the same manner.  Deputy Chief Burton stated "there are going to be vacancies.  We're going to evaluate each one of these vacancies and make a determination whether we can fill that vacancy or have to reassign duties and responsibilities.  I don't think a person can make a carte blanche statement that just because X retires we need to fill that vacancy." It was within the Chief's discretion whether to fill a position.  Jones was told at the time that "[a]ll vacancies which occurred prior to the expiration of the previous civil service promotional eligibility list were filled from those lists."  There is nothing in the record tending to show that the former Chief's explanation is unworthy of belief.

In responding to the City's arguments that he was not treated less favorably than any African-American officer and that there was no vacancy, Jones contends that in order to reach Harris, the City had to promote the

29

two white officers who ranked ahead of him on the promotional eligibility roster.  But the positions filled by Harris and the two white officers came open before the eligibility lists expired.  The same is not true for the position sought by Jones.  Although there were occasions when an officer was promoted before his predecessor's separation, there is nothing in the record which suggests this was ever done for impermissible reasons.  This practice benefitted white officers and African-American officers.

Jones alleges that by the time the City reached Harris, there were two impending vacancies which were to occur for sergeant positions.  Jones claims that one arose because of the retirement of Lieutenant Bill Pittman and the promotion of a sergeant to fill his position.  The second was going to occur because Lieutenant Pat Fogleman had been promoted to the rank of deputy chief.  According to Jones, this created a vacancy for Fogleman's old position and (in order to fill that position) a sergeant vacancy as well.  While the City promoted Harris based upon the impending retirement of Pittman, it chose not to do so with respect to Jones, despite the vacancies created by the promotion of Fogleman.

Fogleman's promotion (and James Burton's retirement) did not take effect until after the expiration of the promotion eligibility lists. This is true regardless of whether Fogleman performed some of a deputy chief's tasks as part of his training before the effective date of his promotion. There was no vacancy for the Plaintiff to fill. It is unclear whether anyone was ever ultimately promoted to sergeant because of Fogleman's promotion to deputy chief. What is clear is that no one was promoted before the eligibility list expired. All of the sergeant vacancies that arose prior to the expiration of the eligibility roster were filled in order of rank. Moreover, whether to fill an alleged vacancy was within the discretion of former Chief Kliment. There is nothing in the record which suggests his reasons for not promoting Jones were discriminatory or unworthy of belief.

## III. CONCLUSION

The City is entitled to summary judgment because the position Jones sought did not become open until after the promotion eligibility lists expired. The vacancies that existed prior the expiration of the eligibility lists were filled from those lists. Although there were instances in which

candidates were promoted early, there is no evidence that race was a factor in those decisions.  The record shows that several white officers and at least one African-American officer were promoted in that manner.

Ergo, the Defendant's motion for summary judgment [d/e 24] is ALLOWED.  The Clerk will enter judgment in favor of Defendant City of Springfield, Illinois.

ENTER: March 28, 2008

FOR THE COURT:

s/Richard Mills
United States District Judge

32